UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **RONNIE PAUL THIBODEAUX** | * | **CIVIL ACTION NO. 10-0032** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Ronnie Paul Thibodeaux, born February 17, 1973, filed applications for a period of disability, disability insurance benefits, and supplemental security income on February 6, 2007, alleging disability since December 12, 2000, due to status-post brain tumor, grand mal seizure disorder, substance abuse disorder, and back problems.

### FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the

Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Dr. Leopoldo Dealvare dated April 27, 2000**. Claimant had had a cerebral lipoma removed in December, 1997. (Tr. 478). About two months later, he starting having seizures and was placed on Dilantin. He was having seizures about once every three months, but reported having two seizures and excruciating headaches at the April 27, 2000 exam.

A CT scan and MRI showed post-surgical changes in the right frontoparietal region and some inflammatory changes in claimant's sinuses. Claimant had no evidence of any recurrent tumor, stroke, or hemorrhage.

After Dr. Dealvare raised claimant's Dilantin level, claimant had no further seizures. (Tr. 183). Dr. Dealvare's impression was break-through seizures in a patient who had been controlled for three years.

**(2) Records from Vermilion Hospital dated March 8-18, 2002**. On March 8, 2002, claimant was admitted for recurrent major depression, severe, cocaine dependence, and alcohol dependence. (Tr. 155). On discharge, his

prognosis was guarded. (Tr. 157). His Global Assessment of Functioning ("GAF") was 40 on admission and 50 on discharge.

**(3) Records from Our Lady of Lourdes dated August 6, 2002**. Claimant was admitted for attempting suicide by overdosing on Trazadone. (Tr. 163, 476). He had also overdosed on Dilantin on December 14, 2000. (Tr. 191). He was discharged on August 7, 2002, with diagnoses of Trazodone overdose, suicide attempt, depression, seizure disorder, and ethanol and poly-substance abuse by history. (Tr. 161, 166).

**(4) Consultative Examination by Dr. Michael Ellerbe dated April 7, 2007**. Claimant alleged a brain tumor in 1997, a recently collapsed lung, and occasional depression. (Tr. 383). He reported that he had started having grand mal seizures a year after surgical removal of a benign lipoma. Reportedly, his last seizure was five days prior, and he had had two more since January, 2007. His medications included Dilantin and Xanax.

On mental status examination, claimant was oriented as to time, place, and situation. (Tr. 384). He did not appear depressed or anxious. His recent and remote memory was intact. He had good insight and cognitive function.

The diagnoses were seizure disorder and brain tumor. (Tr. 385). Dr. Ellerbe observed no residuals from claimant's brain tumor. A CT/MRI confirmed

a previous craniotomy.

Dr. Ellerbe opined that claimant should be able to sit, walk, and/or stand for a full workday, hold a conversation, respond appropriately to questions, carry out and remember instructions if his seizures were controlled. He further stated that lifting/carrying was not restricted as long as claimant's seizures were controlled.

**(5) Consultative Psychological Examination by Naomi L. Friedberg, Ph.D., dated May 5, 2007**. Claimant stated that he had been clean of all drugs for four years. (Tr. 389). His medications included Phemytoin SOD and Alprazolam. He reported that the Alprazolam seemed to "help his brain stay calm", as it decreased his seizure activity and helped his mood. He indicated that he had tried to get work, but his employers fired him as soon as they found about his seizures.

Claimant reported that he had an 11th grade education, but had quit due to his severe drug addiction. He related that he had been hospitalized for mental health difficulties and drug abuse four or five times while in his 20s. (Tr. 390). He denied current use of alcohol or drugs, but stated that he smoked cigarettes.

On examination, claimant's though processes were logical and coherent. His intelligence was estimated to be in the average range. He admitted to many mood swings, sometimes being hyper, and occasionally feeling depressed with frequent crying. He reported much anxiety that was helped with medication. He

denied current suicidal ideation, and did not currently receive any mental health treatment.

Dr. Friedberg's impressions were mood disorder, NOS, major depressive disorder, recurrent, severe with suicidal ideation (by history), and polysubstance abuse (in remission).  She opined that claimant's ability to understand, remember, and carry out simple, moderate, and detailed instruction appeared to be intact.  She stated that his ability to maintain attention to perform simple, repetitive tasks over a two-hour block of time, as well as to sustain effort and persist at a normal pace over the course of a routine 40-hour work week, "would be negatively impacted by significant Mood Disorder, but mostly by his medical issues that he has self reported."  She wrote that his ability to sustain effort and persist at a normal pace over the course of a routine 40-hour work week would be "most likely impacted by the medical issues he reports."

Dr. Friedberg further opined that claimant appeared to be capable of relating to others, but might have difficulty tolerating the stress and pressure associated with day-to-day work activities due to his long history of mental health difficulties.  (Tr. 391).  She strongly suggested that he secure regular mental health treatment to stabilize his mood difficulties.  She concluded that he was most likely capable of managing his personal financial affairs.

**(6) Physician Residual Functional Capacity ("RFC") Assessment dated May 2, 2007.**  Dr. Fred Ruiz determined that claimant had no exertional, postural, manipulative, or visual limitations.  (Tr. 393-95).  He no environmental limitations, except that he had to avoid concentrated exposure to hazards, such as machinery and heights.  (Tr. 396).

**(7) Psychiatric Review Technique ("PRT") dated January 1, 2007 to May 4, 2007**.  Joseph Kahler, Ph.D., assessed claimant for affective and substance abuse disorders.  (Tr. 400, 414).  He determined that claimant's impairments were not severe.  He found that claimant had mild restriction of activities of daily living, difficulties in maintaining social functioning, and maintaining concentration, persistence, or pace.  (Tr. 410, 424).  He had no episodes of decompensation.

**(8) PRT dated December 31, 2006**.  Lawrence Guidry, Ph.D., found that claimant's impairments due to affective and substance addition disorders were not severe.  (Tr. 428, 446).  He determined that claimant had mild restriction of activities of daily living, difficulties in maintaining social functioning, and maintaining concentration, persistence, or pace.  (Tr. 438).  He had no episodes of decompensation.

**(9) Mental RFC dated May 10, 2007**. Dr. Guidry found that claimant was moderately limited as to his ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically-based symptoms; accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers. (Tr. 442-43). Dr. Guidry determined that claimant's allegations regarding mental limitations were fully credible, but did not meet or equal a listing. (Tr. 444).

**(10) PRT dated May 10, 2007 (current)**. Dr. Guidry found that claimant had a moderate degree of limitation as to restriction of activities of daily living, difficulties in maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 456). He had no episodes of decompensation.

**(11) Records from Lafayette Bone and Joint Clinic dated March 28, 2008 to October 17, 2008**. On April 15, 2008, claimant was seen for neck and back pain after being involved in an automobile accident on March 28, 2008. (Tr. 480). An MRI showed a right-sided herniated disk at L5-S1 and an annular tear at L4-5. (Tr. 483). Dr. Louis C. Blanda, Jr. performed a microdiskectomy at L5-S1 on the right on October 1, 2008. (Tr. 496, 520).

Post-surgery, claimant was doing well. (Tr. 486). He had some residual right leg pain. He had no numbness and his strength was good. Dr. Blanda recommended that he walk for exercise.

**(12) Claimant's Administrative Hearing Testimony**. At the hearing on November 20, 2008, claimant was 35 years old. (Tr. 23). He was 5 feet 9 inches tall, and weighed 150 pounds. (Tr. 24). He testified that he had lost about 15 pounds over the previous two months.

Claimant had completed 10th grade in regular classes. (Tr. 25). He drove a truck. He had past work experience as a waiter. (Tr. 26). He had also done construction, telemarketing, and windshield installation work.

As to complaints, claimant testified that he had had surgery to remove a benign brain tumor in 1977. (Tr. 35). He reported that he starting having grand mal seizures about one to two years after his surgery. (Tr. 36). He stated that he was currently having seizures once a month. (Tr. 26).

Claimant said that at one point, he was having four or five seizures monthly. (Tr. 27). He reported that his medications seemed to have slowed them down somewhat. He was taking Dilantin and Xanax. (Tr. 31).

Additionally, claimant complained that he went into a state of depression where he had crying spells every couple of months. (Tr. 31). He reported that he

was not currently seeking any mental health treatment.  He also complained of memory lapses, severe headaches, right arm numbness, and right leg trouble.  (Tr. 27, 39).

Claimant reported that he had had a motor vehicle accident in March of 2008.  (Tr. 30).  He said that he had settled his claim for $10,000.

Claimant testified that he used to drink when he was in a major state of depression.  (Tr. 28).  He also took illegal drugs.  He stated that he had tried to commit suicide four times.  (Tr. 36).

Claimant reported that he stopped drinking and taking drugs six years prior.  (Tr. 28, 37).  He said that he smoked a couple of packs of cigarettes daily.  (Tr. 29).

Regarding activities, claimant testified that he did laundry, vacuumed, made the beds, watched television, and took care of his two dogs.  (Tr. 29).  As to limitations, claimant stated that he could sit, stand, and walk for about 30 minutes before his leg and right arm started going numb.  (Tr. 33). He said that he carried only light bags since his back surgery.  (Tr. 29).  He said that home exercises helped somewhat.  (Tr. 33).

**(13) Administrative Hearing Testimony of Richard H. Galloway, Vocational Expert ("VE")**.  Mr. Galloway classified claimant's past work as a

carpenter's helper as heavy and semi-skilled; a heavy equipment operator as medium and semi-skilled; a windshield installer as medium and semi-skilled; a telemarketer as sedentary and semi-skilled, and a waiter as light and semi-skilled. (Tr. 40-41). The ALJ posed a hypothetical in which he asked the VE to assume a claimant of the claimant's age, education, and work experience; who could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk and sit for about six hours; could not work at heights or around dangerous machinery; could not do complex work due to emotional problems; could do work which required following one-, two-, or three-step instructions, and was a little more comfortable working with things rather than people. (Tr. 41).

In response, Mr. Galloway testified that claimant could not return to his past work, but could work as an assembler, of which there were 845 sedentary jobs statewide and 76,090 jobs nationally, and 2,647 light jobs statewide and 873,675 nationally; folding machine operator, of which there were 35,153 light jobs nationally and 757 statewide, and hand packer, of which there were 202,091 jobs nationally and 5,654 statewide. (Tr. 42-43).

The ALJ changed the hypothetical to add that claimant had seizures once a month, and had to miss two or three days a month following the seizure. (Tr. 42). In response, the VE testified that claimant could not do any work on a sustained

10

basis. _____

 **(14) The ALJ's Findings are Entitled to Deference**.  Claimant argues that: (1) the ALJ in relying only on the opinions of the consultative examiner and the non-examining medical consultant, and (2) the ALJ erred in ignoring the testimony of the vocational expert.

 First, claimant argues that the ALJ relied only on the reports from the consultative examiner and the RFC observations by non-examining medical consultants to assess his seizure disorder.  Specifically, he asserts that the ALJ erred in relying on the consultative examiner's opinion that claimant could lift and carry as long as his seizures were controlled, and "[t]he record clearly shows that [claimant's] seizures are most definitely not controlled." [rec. doc. 10, p. 3].  However, the claimant fails to cite medical evidence showing that he had grand mal seizures at least once a month as he claims.

 One of the criteria for meeting the listing for epilepsy is that convulsive seizures occur more frequently than once a month, and non-convulsive seizures occur more frequently than once weekly, "in spite of at least 3 months of prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 11.02, 11.03.  The medical records show that claimant reported seizures on April 24, 2000, April 25, 2000, April 29, 2000, June 23, 2000, January 19-21, 2001, May 23, 2001, October

9, 2001, and February 10, 2002. (Tr. 169-71, 172, 175-76, 179, 197, 199-200, 205, 213, 233). These records reflect that his seizures occurred when his medication levels were low or he had stopped taking medications. (Tr. 170, 177, 179, 197, 200, 202, 233-35). Claimant reported to physicians and testified at trial that the medications helped to control his seizures. (Tr. 27, 179, 389). If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

Although claimant reported to the consultative examiner, Dr. Ellerbe, that he had had seizures about once a month since January, 2007, this claim is not supported by the medical records. As the ALJ noted, Dr. Ellerbe said that claimant could lift and carry as long as his seizures were controlled. (Tr. 14). The records from claimant's treating physicians reflect that claimant's seizures were controlled with medication. Accordingly, the ALJ's finding is entitled to deference. (Tr. 383).   Additionally, the medical evidence indicates that claimant was non-compliant with his seizure medications. The records from his treating neurologist reflect that claimant had "questionable marginal compliance." (Tr. 205). Additionally, claimant had left the hospital against medical advice and

had failed to followup with his physicians. (Tr. 206, 213-14, 216). It is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 404.1530(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990). Thus, claimant's argument lacks merit.

Next, claimant argues that the ALJ's finding that his back surgery was temporarily disabling, but not disabling for 12 months, is unsupported. [rec. doc. 10, p. 3]. However, Dr. Blanda reported that post-surgery, claimant was doing well, with no numbness and good strength. (Tr. 486). Claimant has submitted no evidence since that point to show that his condition was disabling for 12 months.

Claimant further asserts that the ALJ erred in ignoring Dr. Friedberg's opinion that his ability to sustain effort and persist at a normal pace over the course of a routine 40-hour workweek would be negatively impacted by his mood disorder. [rec. doc. 10, p. 5; Tr. 390]. However, claimant omitted the remainder of Dr. Friedberg's finding, which was that claimant "would be negatively impacted by significant Mood Disorder, *but mostly by his medical issues that he has self reported*." (emphasis added). The ALJ did not "ignore" Dr. Friedberg's opinion, but gave it "some weight," noting that claimant's own testimony reflected that he was no longer alleging symptoms consistent with severe depression. (Tr. 15). Indeed, Dr. Friedberg acknowledged that claimant was not currently

receiving any mental health treatment. (Tr. 390). It is well established that the ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *Chester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir.1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms); *Carmouche v. Commissioner of Social Sec.*, 2009 WL 1076617 (W.D. La. Apr. 20, 2009); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling condition). Thus, this argument lacks merit.

Finally, claimant asserts that the ALJ erred in failing to adopt Mr. Galloway's finding that he would be unable to work if he had seizures once a month and could not work for a day or two after a seizure. [rec. doc. 10, p. 5]. However, the medical records do not support claimant's assertion that he had seizures once a month. It is well established that the ALJ is not bound by VE testimony which is based on evidentiary assumptions ultimately rejected by the ALJ. *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir.1985); *Falls v. Apfel*, 2000 WL 329233, *7 (E.D. La. March 29, 2000). As the ALJ's hypotheticals to the

vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the claimant or her representative had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME**

**AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed July 14, 2011, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE